Jason R. Flanders (Bar No. 238007)
Erica A. Maharg (Bar No. 279396)
Aqua Terra Aeris (ATA) Law Group
4030 Martin Luther King Jr. Way
Oakland, California 94609
Telephone: (510) 473-8793
Email: jrf@atalawgroup.com
Email: eam@atalawgroup.com

Drevet Hunt (Bar No. 240487)
California Coastkeeper Alliance
1100 11th Street, 3rd Floor
Sacramento, California 95814
Phone: (415) 606-0864
Fax: (415) 520-6125
Email: dhunt@cacoastkeeper.org

Daniel Cooper (Bar No. 153576)
Sycamore Law
1004 O'Reilly Ave
San Francisco CA 94129
Phone: (415) 360-2962
Email: daniel@sycamore.law

Attorneys for Plaintiff
CALIFORNIA COASTKEEPER ALLIANCE

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

#### SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA COASTKEEPER ALLIANCE, a California non-profit corporation, <br><br>         Plaintiff, <br><br>     v. <br><br> COUNTY OF SACRAMENTO, a municipality, SACRAMENTO AREA SEWER DISTRICT, a California county sanitation district, and SACRAMENTO COUNTY DEPARTMENT OF WATER RESOURCES, <br><br>         Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

California Coastkeeper Alliance ("Alliance" or "Plaintiff"), by and through its counsel, hereby alleges:

I.    **INTRODUCTION**

1.    This is a civil action brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), to address the unlawful point source discharges by the County of Sacramento ("County") and/or the Sacramento Area Sewer District ("SASD") to waters of the United States without a permit. This action further addresses the County's violations of National Pollutant Discharge Elimination System Permit and Waste Discharge Requirements MS4 Permit for Discharges from Municipal Separate Storm Sewer Systems, NPDES Permit No. CAS0085324, Order No. R5-2016-0040 ("MS4 Permit"). The Alliance seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and an award of costs, including attorney and expert witness fees, for these violations.

II.    **JURISDICTION AND VENUE**

2.    This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) (the Clean Water Act citizen suit provision), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 2201 (declaratory relief).

3.    On August 13, 2021, the Alliance provided notice of intent to file suit against the County and SASD for their violations of the Clean Water Act ("Notice Letter") pursuant to 33 U.S.C. § 1365(b). The Notice Letter is attached hereto as Attachment 1 and is incorporated herein by reference.

4.    As required by 40 C.F.R. § 135.2(a)(2), the Alliance sent the Notice Letter to the County of Sacramento as owner/operator of the County's municipal separate storm sewer system MS4 ("MS4"), and to the County and the SASD as the owners and/or operators of the SASD sewage collection system ("Collection System"); specifically, the County Executive, the District Engineer, the Board of Directors of the SASD, the Director of Sacramento County Department of Water Resources, and the Administrator of the Sacramento County Sanitation Districts Agency. The Alliance also sent the Notice

Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Region 5, Central Valley ("Regional Board") (collectively, "State and Federal agencies"), as required by section 505(b) of the CWA, 33 U.S.C. § 1365(b)(1)(A). The Notice Letter is attached as Attachment 1 and is incorporated herein by reference.

5.    More than sixty (60) days have passed since the Notice Letter was mailed to the County, SASD, and the State and Federal agencies.

6.    The Alliance is informed and believes, and thereon alleges, that neither EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in the Notice Letter and in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under section 309(g) of the CWA, 33 U.S.C. § 1319(g).

7.    Venue is proper in the Eastern District of California pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## III.    <u>INTRADISTRICT ASSIGNMENT</u>

8.    Pursuant to L.R. 120(d) intradistrict assignment of this matter to the Sacramento Division of the Court is appropriate because the events or omissions which give rise to Plaintiff's claims occurred in Sacramento County. In addition, the Alliance maintains its principal place of business in the County of Sacramento. No event or omission giving rise to the Alliance's claims occurred within the jurisdiction of any other Division of this Court.

## IV.    <u>PARTIES AND FACTUAL BACKGROUND</u>

### A.    **The Alliance**

9.    Plaintiff the Alliance is an environmental group, organized as a non-profit corporation in accordance with the laws of the State of California, with its main office in Sacramento.

10.    The mission of the Alliance is to advance statewide policies and programs for healthy

and clean waters. To this end, the Alliance works with local Waterkeepers to develop, implement, and defend policies that meet the needs of California's distinct communities and ecosystems. The Alliance also seeks federal and state agency implementation of the CWA and, where necessary, initiates enforcement actions on behalf of itself and its members.

11.     The Alliance's office is located at 1100 11th Street, 3rd Floor, Sacramento, CA 95814.

12.     The Alliance's members use and enjoy the waters receiving the illegal discharges identified herein, including but not limited to the Mokelumne River, Dry Creek, Morrison Creek, the American River, the Sacramento River, and the named and unnamed tributaries thereto ("Receiving Waters").

13.     The Alliance is informed and believes, and thereon alleges, that the County and SASD discharge raw sewage and associated pollutants to the Receiving Waters. These discharges of raw sewage and associated pollutants degrades water quality and harms aquatic life in these waters.

14.     The Alliance is informed and believes, and thereon alleges, that SASD and the County discharge to area businesses, residents' yards and basements, and municipal sidewalks, streets, gutters, and other paved and unpaved areas, which exposes members of the Alliance and the public to substantial health risks.

15.     The Alliance has members who use and enjoy the Receiving Waters for various recreational, educational, scientific, conservation, aesthetic, spiritual and other purposes.

16.     The interests of the Alliance's members have been, are being, and will continue to be adversely affected by the County's and/or SASD's failure to comply with the Clean Water Act and the MS4 Permit.

17.     The Alliance has one or more members who use, explore, and recreate in areas impacted by the pollution herein at issue and could sue in their own right. Some of the Alliance's members suffer recreational, aesthetic, or other environmental injuries due to Defendants' pollution.  The Alliance's members use and enjoyment of the Receiving Waters have been reduced and/or changed based on the

discharges of raw sewage, and would cease should the water quality become too degraded.

18.     The County's and SASD's discharges of raw sewage and associated pollutants are ongoing and continuous.

19.     The Alliance's injuries-in-fact are fairly traceable to the County's and/or SASD's conduct.

20.     The Alliance's injuries-in-fact would be redressed by the requested relief.

21.     Continuing commission of the acts and omissions alleged herein will irreparably harm the Alliance's members, for which harm they have no plain, speedy, or adequate remedy at law.

22.     Neither the claims brought by the Alliance nor the relief the Alliance requests requires the participation of individual members.

**B.     The Collection System**

23.     The Collection System consists of approximately 4,682 miles of pipeline, including 3,074 miles of gravity sewer, 1,527 miles of lateral sewer, and 81 miles of force mains. The system has approximately 299,000 service connections,

24.     The Alliance is informed and believes, and thereon alleges, that the Collection System collects and conveys sewage from residential, commercial, industrial, and agricultural sources. Sewage from these sources includes without limitation human and animal waste, household chemicals, wastes from restaurants, wastes from hospitals, and wastes from industrial manufacturing and processing.

25.     The Collection System serves a population of approximately 1.2 million people in the Sacramento region.

26.     The Collection System consists of pipes and other manmade conveyances that are point sources under the Clean Water Act. *See* 33 U.S.C. § 1362(14).

27.     The Collection System conveys sewage from within Sacramento County and the cities of

Elk Grove, Rancho Cordova, and Citrus Heights, and portions of the cities of Sacramento and Folsom, to the sewage collection system owned and operated by the Sacramento Regional County Sanitation District, where it is subsequently delivered to the Sacramento Regional Wastewater Treatment Plant.

28.     The Collection System runs through a number of river watersheds that make up the Receiving Waters.

### C.   The Owners and Operators of the Collection System

#### i.   The County of Sacramento

29.     The Alliance is informed and believes, and thereon alleges, that the County of Sacramento is an owner and/or operator of the Collection System.

30.     The County of Sacramento is a political subdivision of the State of California.

31.     Under the Sacramento County Code, section 2.09.710, "there is established within County government a Sanitation Districts Agency."

32.     The SASD and Sacramento Regional County Sanitation District ("SRCSD") select, the County Executive Officer appoints, and the County Board of Supervisors confirms, a District Engineer. The District Engineer serves as the County Sanitation Districts Agency's "Agency Administrator." Sacramento County Code § 2.09.710.

33.     The Agency Administrator is subject to removal by the County Executive. Sacramento County Code § 2.09.710. The Agency Administrator manages and controls many aspects of the SASD operations. The Agency Administrator is responsible for, among other things, (1) performing duties authorized and directed by the SRCSD and SASD Boards of Directors, (2) overseeing the department with County staff assigned to SRCSD and SASD and acting as liaison to those districts' governing bodies, (3) making recommendations to the SRCSD and SASD Boards of Directors and the County Executive respecting sanitary sewer services and infrastructure. *See* Sacramento County Code § 2.09.710. Staff for the operations of SASD is provided by the County. Sacramento County Code § 2.09.700.

34.     There are four departments within the County Sanitation Districts Agency. One of these departments is the SASD Operations department. *See* Sacramento County Code § 2.09.710. The SASD Operations department is responsible for, among other things, (1) performing duties authorized and directed by the SASD Board of Directors, (2) processing all technical matters related to SASD, (3) making recommendations regarding the awarding of contracts for the construction, repair, and maintenance of all facilities under the department supervision, (4) representing the County and SASD in dealing with other agencies, organizations, groups, and individuals, and (5) advising and assisting other county departments and agencies with respect to the sewer district. *See* Sacramento County Code § 2.09.730.

### ii.   Sacramento Area Sewer District

35.     The Alliance is informed and believes, and thereon alleges, that SASD is an owner and/or operator of the Collection System.

36.     The SASD is a county sanitation district organized under the California Health and Safety Code that serves the cities of Elk Grove, Rancho Cordova, and Citrus Heights, and portions of the cities of Sacramento and Folsom.

37.     The SASD owns thousands of miles of lower laterals and sewer mainline pipes that make up the Collection System. SASD is responsible for the operation and maintenance of the Collection System. These responsibilities include responding to citizen complaints of Sanitary Sewer Overflows ("SSOs"), conducting routine maintenance, cleaning, and inspection of the Collection System, and repairing and replacing the Collection System.

38.     The SASD is overseen by a Board of Directors composed of the five Sacramento County Supervisors and the mayors (or their designees) of the cities of Citrus Heights, Elk Grove, Folsom, Rancho Cordova, and Sacramento.

### D.  Sanitary Sewer Overflows from the Collection System

39.     Since July 14, 2018, the County and SASD have had at least 2,629 SSOs from the

Collection System, which is equivalent to an average of 14.61 SSOs per 100 miles of sewer pipes per year for 2019 and 2020. *See* Notice Letter, section IV.A, at 9. These SSOs are documented in information reported to the California Integrated Water Quality Systems ("CIWQS").

40.    The Alliance is informed and believes, and thereon alleges, that these reported SSOs have spilled directly to area surface waters, to the streets, curbs, gutters and other paved surfaces that comprise the MS4, to unpaved areas, and into homes and businesses served by the Collection System.

41.    The MS4 is a conveyance or system of conveyances designed or used for collecting and conveying storm water. It and its components are point sources under the Clean Water Act.

42.    The Alliance is informed and believes, and thereon alleges, that once raw sewage and its associated pollutants are discharged to the MS4, they will be subsequently discharged to waters of the United States.

43.    The Alliance is informed and believes, and thereon alleges, that of the 2,629 SSOs, at least 759 discharged to waters of the United States.

44.    The Alliance is informed and believes, and thereon alleges, that SASD and/or the County has failed to adequately operate, maintain, repair, rehabilitate, and/or replace the Collection System, thus resulting in SSOs.

45.    The Alliance is informed and believes, and thereon alleges, that the County and/or SASD's SSO reports lack the details that would identify the causes and the potential repairs ensuring these violations would not recur.

46.    The Alliance is informed and believes, and thereon alleges, that some of the SSOs reported by the County and/or SASD as partially reaching a surface water did so in greater volume than stated.

47.    The Alliance is informed and believes, and thereon alleges, that the County and/or SASD lack an adequate monitoring program to detect, report, and address SSOs and their impacts.

48.    The Alliance is informed and believes, and thereon alleges, that the County and/or

SASD has failed to post health warning signs for discharges reaching a surface water for at least 164 spills. *See* Notice Letter, section IV.A, at 11.

49.    The Alliance is informed and believes, and thereon alleges, that the County and SASD fails to adequately mitigate the impacts of SSOs, including, but not limited to, analyzing the impact of its SSOs or measures needed to restore water bodies from the impacts of SSOs.

50.    The Alliance is informed and believes, and thereon alleges, the County and/or SASD are not reported SSOs, and that since July 14, 2018, data on CIWQS indicates that of the 759 SSOs reported by the County and/or SASD as having reached a surface water, only 16 were sampled. *See* Notice Letter, section IV.A, at 12.

51.    The Alliance is informed and believes, and thereon alleges, that many of the SSOs from the Collection System are caused by defects in the sewer lines, displaced joints, eroded segments, root intrusion, and blockages due to grease and rags.

52.    The Alliance is informed and believes, and thereon alleges, that many of the SSOs from the Collection System are capacity-related spills caused by the Collection System's inadequate capacity to handle peak wet-weather flows. Flows through the Collection System increase considerably during wet weather due to the infiltration and inflow of rainwater into sewer pipes, which overwhelms the capacity of the Collection System and causes SSOs.

53.    The Alliance is informed and believes, and thereon alleges, that sewage wastewater seeps into groundwater hydrologically connected to surface waters including the Receiving Waters.

54.    The Alliance is informed and believes, and thereon alleges, that at no point has SASD or the County obtained a CWA permit that authorizes the discharge of pollutants from the Collection System to waters of the United States.

**E.  The County MS4**

55.    An MS4 is a system of conveyances that includes but is not limited to streets, curbs, gutters, other paved surfaces, catch basins, ditches, man-made channels, catch basins and/or storm drains

owned or operated by a State, city, or town that is designed or used for collecting or conveying storm water and that discharges to waters of the United States. *See* 40 C.F.R. 122.26(b)(8)(i)-(ii); *see also* 40 C.F.R. § 122.26(b)(18).

56.    The MS4 covers areas also served by the Collection System.

57.    The County MS4 contains numerous streets, curbs, gutters, sidewalks, other paved surfaces, and/or storm drain inlets that lead to storm drain pipes and other conveyances, which discharge to the Sacramento River, the American River, and/or their local tributaries.

58.    The Alliance is informed and believes, and thereon alleges, that pollutants in SSOs and other materials that reach the County MS4 discharge to local waterways.

**F.  The Owner and Operator of the MS4**

59.    The County owns and/or operates the MS4 in the unincorporated areas of Sacramento County.

60.    The County is a permittee on the MS4 Permit.

61.    The County is required to comply with all provisions of the MS4 Permit. General Permit, Provisions, D.1.A.

62.    The Alliance is informed and believes, and thereon alleges, that pursuant to the General Permit, the County has had and continues to have jurisdiction over and/or operation and maintenance responsibilities for the MS4.

63.    The County's Department of Water Resources is charged with the operation and maintenance of the MS4.

**G.  Discharges of Sewage and Associated Pollutants into the County MS4**

64.    The Alliance is informed and believes, and thereon alleges, that on at least 749 occasions since July 14, 2018, sewage from the Collection System discharged into the County MS4. *See* Notice Letter, section IV.C, at 13.

65.    SSOs that enter the County MS4 are not storm water.

Complaint                                                                                         10

66.     The MS4, including the storm drains and accompanying pipes and channels, are designed to convey any storm water or sewage effluent that enters the drains to area receiving waters.

67.     The Alliance is informed and believes, and thereon alleges, that SSOs that reach a street, curb, or gutter have entered the MS4.

68.     The Alliance is informed and believes, and thereon alleges, that the County and SASD have been underreporting and/or misreporting the number of SSOs that enter the MS4 from the Collection System.

69.     The Alliance is informed and believes, and thereon alleges, that the County spills or otherwise discharges raw sewage from its collection system into the MS4 in violation of the MS4 Permit's requirement to effectively prohibit SSOs from reaching the MS4.

70.     The County owns, operates, and retains controls over the Collection System and the MS4, and its failures to effectively reduce SSOs and exfiltration from the Collection System into the MS4 has failed to effectively prohibit non-permitted discharges into the MS4, or to reduce pollutants in stormwater discharges to the maximum extent practicable. *See* MS4 Permit at 3, and F-53, citing 40 CFR 122.26(d)(2)(iv)(B).

**H. Discharges of Storm Water from the County MS4 Contaminated with Pollutants Associated with Sanitary Sewer Overflows**

71.     As noted above, SSOs from the Collection System have discharged to the MS4 at least 749 times since July 14, 2018. *See* Notice Letter, section IV.B, at 12. The pollutants from these SSOs enter the MS4 and are either immediately discharged from the MS4 to local waterways, or are discharged to local waterways during the next precipitation event that produces a discharge from the MS4.

72.     The Alliance is informed and believes, and thereon alleges, that, since July 14, 2018, on

at least 164 occasions, SSOs from the Collection System entered the MS4 and immediately discharged to waters of the United States with pollutants that had not been reduced to the maximum extent practicable, in violation of the MS4 Permit, III.A. *See* Notice Letter, section IV.C, at 13.

73.     The Alliance is informed and believes, and thereon alleges, that the County has not developed and/or implemented sufficient operational and management practices to reduce to the maximum extent practicable the presence of pollutants associated with SSOs found in its discharges of storm water from the MS4.

**I.   The Waters that Receive the Illegal Discharges and the Environmental Impact of those Discharges**

74.     The Alliance is informed and believes, and thereon alleges, that the Receiving Waters are waters of the United States and/or have a significant nexus to waters of the United States, and are thus navigable waters as defined by the Clean Water Act and controlling legal authority.

75.     The Delta is navigable.

76.     The Sacramento River is navigable.

77.     The American River is navigable.

78.     The Mokelumne River is navigable and flows into the Delta.

79.     Dry Creek is a tributary to Steelhead Creek, which then flows into the Sacramento River.

80.     Morrison Creek flows through central Sacramento County from the east to the west toward the Sacramento River. Historically, Morrison Creek flowed to the Sacramento River. Currently, Morrison Creek flows to Stone Lake, where it joins a network of sloughs that connect to the Sacramento River and the Delta.

81.     The American River supports over forty (40) species of fish in the Lower American River watershed. The watershed is a diverse ecosystem, critical to the freshwater life cycle of the endangered winter-run Chinook salmon, the threatened spring-run Chinook salmon, and the threatened Steelhead

trout. Designated a "Recreational River" under the California Wild and Scenic Rivers Act and the National Wild and Scenic Rivers Act, the lower American River is widely appreciated for a variety of water contact recreational uses including swimming. The Lower American River meanders westerly from Folsom Lake, joining the Sacramento River's journey south to the Sacramento-San Joaquin Delta about a mile north of Sacramento.

82.     The Sacramento River is California's largest river and the largest contributor of fresh water to the Sacramento-San Joaquin Delta. Beneficial uses of the Sacramento River include municipal and domestic water supply, agricultural water supply, water contact and non-contact recreation, industrial process and industrial service supply, warm and cold freshwater habitat, cold and warm migration of aquatic organisms, warm spawning, reproduction and/or early development, wildlife habitat, and navigation. The Sacramento River is designated critical habitat for the endangered winter-run Chinook salmon as well as the spring-run Chinook salmon, Steelhead trout, Delta smelt, and green sturgeon, all of which are federally-listed threatened species. Many of the Defendant's SSOs which do not directly spill into the Sacramento River still reach the River via its tributaries. While some areas where spills have occurred were dry at the time of spill, the discharged pollutants remain on the surface of the land and enter receiving waters following rainfall or flooding.

83.     The Delta is the largest Pacific Coast estuary in both North and South America. The Delta is the confluence of five major rivers and numerous creeks and sloughs. This maze of finger-like waterways ebbs and flows through prime California natural habitat and farmland. The Delta is also the primary source of fresh water supply for two-thirds of California's residents. The preservation of this natural resource is essential. The Delta and its tributaries also provide special aesthetic and recreational significance for people living in the surrounding communities. With 700 miles of channels, nearly all navigable, recreation in the Delta is mainly water-oriented. Major recreational activities supported by the Delta include as fishing, water-skiing, sailing, cruising, personal watercraft, canoeing, kayaking, swimming, and windsurfing. These activities depend upon water quality and habitat preservation in the

Delta. The growing urbanization of the Delta area makes these recreational and aesthetic uses even more important to the quality of life of Delta residents. Furthermore, the Delta fosters the commercial fishing industry in California and beyond. Commercial fishers and sport fishers alike continue to suffer from the constant degradation of the Delta through illegal discharges, including SSOs. The Delta's once-abundant and varied fisheries and species habitat have been drastically diminished by pollution.

84.     Spills of raw sewage and discharges of sewage-contaminated storm water harm the Receiving Waters, and pose a serious risk to fisheries, wildlife habitat, and human health, including the health of the Alliance's members.

85.     In addition to human waste and bacteria, sewage contains heavy metals, as well as chemicals that cause cancer or reproductive toxicity. These metals and chemicals come from solvents, detergents, cleansers, inks, pesticides, paints, pharmaceuticals, and other materials used by households and businesses, and then discarded to sewage collection systems. High concentrations of these pollutants are typically found in discharges of raw sewage. The intensive use of the American River, Sacramento River, and the numerous tributaries to these rivers for sport fishing and water-contact recreation increases the likelihood of direct human contact with spilled sewage and the pollutants it contains.

86.     Sewage pollution also affects people who eat fish caught in the Delta and its tributaries. Toxic chemicals are concentrated in the Delta's food web, which means that contaminants absorbed by plankton are magnified in fish and birds farther up the food chain and ultimately ingested by human consumers. Contamination of fish is particularly harmful to ethnic and economic minorities, who typically eat an above-average amount of local fish.

87.     The intensive use of the Delta, the Sacramento River, and the American River for commercial, sport fishing, and water-contact recreation increases the likelihood that people, including members of the Alliance, will come into direct contact with spilled sewage and the pollutants it contains.

88.     Many of the water bodies to which the Defendant's discharge sewage and associated

pollutants are listed on the State of California's 2018 Clean Water Act Section 303(d) list of impaired water bodies. ("303(d) List"). An impaired water body cannot support the designated beneficial uses for that water body. The designated uses of the water bodies receiving the County's and SASD's discharges include, but are not limited to, municipal and domestic use, warm and cold freshwater habitat, and warm and cold fish migration. *See* Water Quality Control Plan ("Basin Plan") for the California Regional Water Quality Control Board Central Valley Region, Fifth Edition, The Sacramento River Basin and San Joaquin River Basin, (May 2018), Table 2-1.

89.     The Sacramento River (Knights Landing to Delta) is listed on the 303(d) List as impaired for Mercury, DDT (Dichlorodiphenyltrichloroethane), Chlordane, Dieldrin, PCBs (Polychlorinated biphenyls), and Toxicity.

90.     The American River (Nimbus Dam to confluence with Sacramento River) is listed on the 303(d) List as impaired for Mercury, Toxicity, PCBs, Bifenthrin, and Indicator Bacteria.

91.     The Delta Waterways (northern portion) is listed on the 303(d) List as impaired for PCBs, DDT, Chlorpyrifos, Diazinon, Mercury, Toxicity, Group A pesticides, Dieldrin, Chlordane, and Electrical Conductivity.

92.     Delta Waterways (eastern portion) is listed on the 303(d) List as impaired for DDT, Toxicity, Diazinon, Mercury, Chlorpyrifos, Group A Pesticides.

93.     The Alliance is informed and believes, and thereon alleges, many of the pollutants impairing the waters that receive discharges from SASD and the County are found in SASD's and the County's discharges of raw sewage from the Collection System, as well as in the County's storm water discharges from the MS4, directly harming the Alliance's members' use and enjoyment of these waters.

94.     SSOs that do not directly reach Receiving Waters still pose significant health risks to the Alliance's members and others by depositing raw sewage in public streets, public buildings and grounds, and private yards and homes. SSOs contain large quantities of bacteria, viruses, mold spores, and protozoa. Exposure to raw or partially treated sewage can cause a variety of health problems, including

gastroenteritis, respiratory illness, ear, nose, and throat problems, and skin rashes. Mold spores can establish an ecological niche when they are carried onto a homeowner's property during a sanitary sewer overflow, creating an ongoing health risk from chronic exposure. Sewage contaminated waters also may provide a breeding ground for mosquitoes. Residential sewage overflows also diminish property values and impose severe nuisance on local residents.

## V.       LEGAL BACKGROUND

### A.       The Clean Water Act

95.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA. Specifically, section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

96.     The "discharge of a pollutant" means, among other things, the addition of a pollutant to "waters of the United States" from any "point source." 33 U.S.C. § 1362(12); 40 C.F.R. § 122.2.

97.     The term "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6); 40 C.F.R. § 122.2.

98.     "Waters of the United States" are defined as "navigable waters," and "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide." 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2.

99.     The term "point source" means any "discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which

pollutants are or may be discharged." 33 U.S.C. § 1362(14); 40 C.F.R. § 122.2.

100.    An MS4 is defined as "a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains)" owned or operated by a State, city, or town that is "designed or used for collecting or conveying storm water" and "that discharges to waters of the United States." 40 C.F.R. § 122.26(b)(8); *see also id*. § 122.26(b)(18).

101.    Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted stormwater.

102.    In California, the State Board and its nine Regional Boards have approval from EPA to administer its NPDES permit program for the State. Under this authority, the State Board and Regional Boards issue NPDES permits in the State to regulate water pollutant discharges.

103.    Clean Water Act Section 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating municipal storm water discharges under NPDES permits.

104.    Section 402(p) of the CWA, 33 U.S.C. § 1342(p), requires an NPDES permit in order to discharge stormwater from an MS4 to waters of the United States.

105.    Under Section 402(p)(3)(B) of the CWA, 33 U.S.C. § 1342(p)(3)(B), NPDES permits for discharges from MS4s shall include a requirement to effectively prohibit non-stormwater discharges into storm sewers and require "controls that reduce the discharge of pollutants [to receiving waters] to the maximum extent practicable, […] and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants." 33 U.S.C. § 1342(p)(3)(B).

106.    Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" for violations of NPDES permit requirements and for unpermitted discharges of pollutants. *See* 33 U.S.C. §§ 1365(a)(i), 1365(f).

107.    The County and the SASD are each a "person" within the meaning of section 502(5) of

the CWA, 33 U.S.C. § 1362(5).

108.    An action for injunctive relief is authorized under section 505(a) of the CWA, 33 U.S.C. § 1365(a).

109.    Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $56,460.00 per day per violation for violations that occurred after November 2, 2015. 33 U.S.C. § 1319(d); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §§ 19.1-19.4.

110.    Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing or substantially prevailing parties to recover litigation costs, including attorneys' fees, experts' fees, and consultants' fees.

**B.      The Requirements of the MS4 Permit**

111.    Discharges into and from the MS4 are regulated by the National Pollutant Discharge Elimination System Permit and Waste Discharge Requirements MS4 Permit for Discharges from Municipal Separate Storm Sewer Systems, NPDES Permit No. CAS0085324, Order No. R5-2016-0040 ("MS4 Permit").

112.    The County is among seven municipal entities that together sought coverage for their municipal storm water discharges under the MS4 Permit. Along with the cities of Sacramento, Folsom, Elk Grove, Citrus Heights, Galt, and Rancho Cordova, the County submitted a Notice of Intent to be covered under the MS4 Permit in 2016, for which a Notice of Applicability was issued on November 23, 2016.

113.    Any violation of the MS4 Permit requirements is a violation of the Clean Water Act. *See* 33 U.S.C. § 1365(f).

114.    Discharge Prohibition II.B.1 of the MS4 Permit requires the County to effectively prohibit the discharge of non-storm water into and out of the MS4.

115.    The MS4 Permit has Technology Based Effluent Limitations that prohibit discharges from the MS4 that contain pollutants not reduced to the maximum extent practicable. MS4 Permit, III.A.

### C.     The SSO Waste Discharge Requirements Order

116.    The State Water Resources Control Board ("State Water Board") adopted Statewide General Waste Discharge Requirements ("WDRs") for Sanitary Sewer Systems, Water Quality Order No. 2006-0003 ("SSO WDR") on May 2, 2006. The Water Board issued Order No. WQ 2013-0058-Exec Amending Monitoring and Reporting Program for Statewide General Waste Discharge Requirements for Sanitary Sewer Systems on August 6, 2013. The Sanitary Sewer Systems WDR requires public agencies that own or operate sanitary sewer systems to develop and implement sewer system management plans and report all SSOs to the State Water Board's online SSO database.

117.    The SASD is enrolled under the SSO WDR.

118.    The SSO WDR prohibits discharges of SSOs to waters of the United States. *See* SSO WDR Prohibitions 1. The SSO WDR is not an NPDES permit. *See* SSO WDR, ¶ 11.

## VI.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Unpermitted Discharges of Pollutants to Waters of the United States in Violation of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1365(a), 1365(f)**

119.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

120.    The County is an owner and/or operator of the Collection System.

121.    The SASD is an owner and/or operator of the Collection System.

122.    The Alliance is informed and believes, and thereon alleges, that SASD and/or the County has been discharging and continues to discharge SSOs from the Collection System directly to waters of the United States, and/or into the MS4 then to waters of the United States, on at least 759 separate occasions since July 14, 2018. *See* Notice Letter, section IV.A, at 9.

123.    The Alliance is informed and believes, and thereon alleges, that additional SSOs will occur during or will be discovered through this enforcement action. Each additional SSO that discharges

to waters of the United States, whether directly or through the MS4, will be included in this action and is a separate Clean Water Act violation.

124.   The Alliance is informed and believes, and thereon alleges, that the waters into which SASD and the County discharges SSOs are waters of the United States.

125.   The Alliance is informed and believes, and thereon alleges, that neither the SASD nor the County has an NPDES Permit that authorizes point source discharges of SSOs to waters of the United States.

126.   Each SSO from the Collection System to waters of the United States and/or into the MS4 then to waters of the United States without an NPDES permit is a separate and distinct violation of the Clean Water Act. 33 U.S.C. § 1311(a).

127.   These discharges and violations are ongoing and it is likely that SASD and/or the County will continue to violate these requirements without judicial intervention.

128.   By committing the acts and omissions alleged above, SASD and/or the County are subject to an assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

129.   An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

130.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a) and (f). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

131.   WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
**Failure to Effectively Prohibit Discharges of Non-Storm Water to the County MS4 in Violation of the MS4 Permit and the Clean Water Act**

132.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

133.    The County is an owner and operator of the MS4.

134.    The Alliance is informed and believes, and thereon alleges, that the County has failed to effectively prohibit the discharge of non-storm water in the form of SSOs to the MS4.

135.    Information currently available to the Alliance indicates that there have been discharges of non-storm water in the form of SSOs to the MS4 on at least 749 occasions since July 14, 2018. *See* Notice Letter, section IV.B, at 12.

136.    The Alliance is informed and believes, and thereon alleges, that additional SSOs to the MS4 will occur during or will be discovered through this enforcement action. Each additional SSO that enters the MS4 will be included in this action.

137.    This high number of SSOs that have discharged to the MS4 indicates that the County has failed to effectively prohibit the discharge of non-storm water in the form of SSOs.

138.    Since July 14, 2018 the County has been liable each day that it failed to effectively prohibit SSOs to the MS4, and these violations continue each day the County fails to effectively prohibit SSOs from entering the MS4.

139.    At a minimum, the County has failed to effectively prohibit the discharge of non-storm water to the MS4 on each and every occasion that non-storm water in the form of SSOs discharged to the MS4.

140.    Each day since July 14, 2018 that the County failed and continues to fail to effectively prohibit discharges of non-storm water in the form of SSOs to the MS4 is a separate and distinct violation of MS4 Permit Discharge Prohibition, II.B.1 and the Clean Water Act. *See* 33 U.S.C. § 1311(a).

141.    The County's failure to effectively prohibit the discharge of non-storm water in the form of SSOs to the MS4 is ongoing and it is likely that the County will continue to violate these requirements of the MS4 Permit without judicial intervention.

142.    By committing the acts and omissions alleged above, the County is subject to an

assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

143.   An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

144.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a) and (f). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

145.   WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Discharges of Pollutants from the MS4 in Violation of Permit Conditions Established by the MS4 Permit and the Clean Water Act**

146.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

147.   The Alliance is informed and believes, and thereon alleges, that the County has discharged and continues to discharge storm water containing raw sewage from the MS4.

148.   The County's SSOs and their discharge via the MS4 are the result of inadequate operation and maintenance of the sewage collection system.

149.   The County's continued failure to prevent SSOs, and to prevent SSOs from reaching the MS4 and from discharging from the MS4, results in a failure to meet its obligation to reduce the discharge of these pollutants from the MS4 to the maximum extent practicable.

150.   The Alliance is informed and believes, and thereon alleges, that additional discharges of raw sewage associated with SSOs that are not reduced to the maximum extent practicable from the MS4 will occur during or will be discovered through this enforcement action. Each additional discharge of raw sewage associated with SSOs in violation of the maximum extent practicable standard will be included in this action.

151.   Each day since July 14, 2018 that the County discharged pollutants associated with SSOs not reduced to the maximum extent practicable from the MS4 is a separate and distinct violation of MS4 Permit, III.A and the Clean Water Act. *See* 33 U.S.C. § 1311(a).

152.   These discharges and violations are ongoing and it is likely that the County will continue to violate MS4 Permit, III.A and the Clean Water Act without judicial intervention.

153.   The Alliance is informed and believes, and thereon alleges, that additional discharges of pollutants not reduced to the maximum extent practicable from the MS4 will occur during or will be discovered through this enforcement action. Each additional discharges of pollutants not reduced to the maximum extent practicable from the MS4 will be a separate violation of the MS4 Permit and the Clean Water Act.

154.   By committing the acts and omissions alleged above, the County is subject to an assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

155.   An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

156.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a) and (f). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

157.   WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## VII.   **RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   Issue a Court order declaring SASD and the County to have violated and to be in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) for their unpermitted discharge of pollutants to waters of the Untied States;

b.   Issue a Court order enjoining SASD and the County from discharging pollutants to

waters of the United States without an NPDES permit in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a);

       c.      Issue a Court order declaring the County to have violated and be in violation of MS4 Permit Discharge Prohibition, II.B.1, and thus to have violated and be in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for its failure to effectively prohibit the discharge of non-storm water into the MS4;

       d.      Issue a Court order declaring the County to have violated MS4 Permit, III.A and thus to have violated and be in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants associated with SSOs from the MS4 that have not been reduced to the maximum extent practicable;

       e.      Issue a Court order enjoining the County from violating the substantive and procedural requirements of the MS4 Permit and the Clean Water Act, including specifically a Court order enjoining the County from violating the specific terms, conditions, and provisions of the MS4 Permit and the Clean Water Act identified in this complaint;

       f.      Issue a Court order pursuant to sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a), assessing civil penalties against SASD and/or the County of up to $56,460.00 per day per;

       g.      Award Plaintiff its costs and fees for bringing suit for the City's violations of the Clean Water Act as provided for under by sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365(a);

       h.      Grant any such other relief as the Court deems appropriate.

Dated: October 14, 2021                AQUA TERRA AERIS LAW GROUP

                                  */s/* Jason R. Flanders
                                  Jason R. Flanders
                                  Attorneys for Plaintiff
                                  CALIFORNIA COASTKEEPER ALLIANCE